U.S. Department of Justice

United States Attorney
District of Maryland

Paul E. Budlow
Assistant United States Attorney
Paul.Budlow@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4917
MAIN: 410-209-4800
FAX: 410-962-3091

February 6, 2018

Shari Derrow, Esq.
David J. Walsh-Little, Esq.
Office of the Federal Public Defender
100 South Charles Street
Tower II, Suite 1100
Baltimore, Maryland 21201

Re:   United States v. Piere Ceradoy
      Criminal #: MJG-17-279

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by Friday, February 23, 2018, at 5:00 p.m., it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.     The Defendant agrees to plead guilty to Count Four of the Indictment now pending against him, which charges him with Coercion and Enticement in violation of Title 18, United States Code, Section 2422(b). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.     The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

That from on or about February 2016 through on or about April 9, 2017, in the District of Maryland, and elsewhere:

   a.    The Defendant knowingly used a facility or means of interstate commerce to persuade, induce, entice or coerce an individual under the age of eighteen (18) to engage in sexual activity, or attempted to do so;

   b.    The defendant believed that such individual was less than eighteen (18) years of age; and

1

        c.        That the Defendant could have been charged with a criminal offense for engaging in the specified sexual activity (including attempted production of child pornography as charged in Counts One through Three of the pending indictment).

### Penalties

3.       (a)    The maximum sentence provided by statute for production of child pornography is as follows: not less than ten (10) years and up to life imprisonment, followed by a term of supervised release of not more than life and a fine of $250,000. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, and must pay a $5,000 special assessment pursuant to 18 U.S.C. § 3014, both of which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

[Handwritten annotation in margin: "p 3 / pwl / SD / PC — if determined to be a "non-indigent person""]

       (b)    The Defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

### Waiver of Rights

4.       The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

       a.    If the Defendant had persisted in a plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

       b.    If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

       c.    If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to

present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

  6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

Count Four:

 a. The base offense level for coercion and enticement is 28 pursuant to U.S.S.G. § 2G1.3(a)(3).

 b. Pursuant to U.S.S.G. § 2G1.3(b)(2)(B), there is a two (2) level increase because a participant unduly influenced a minor to engage in prohibited sexual conduct. (Subtotal: 30).

 c. Pursuant to U.S.S.G. § 2G1.3(b)(3)B), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce or facilitate the travel of, the minor to engage in prohibited sexual conduct. (Subtotal: 32).

 d. Pursuant to U.S.S.G. § 2G1.3(b)(4)(A), there is a two (2) level increase because the offense involved the commission of a sex act or sexual contact. (Subtotal: 34).

Relevant Conduct: Production, Attempted Production, and Advertising of Child Pornography, Jane Doe (Counts 1, 2 & 3):

 e. The base offense level is 32 pursuant to U.S.S.G. § 2G2.1(a).

 f. Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 34).

 g. Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act. (Subtotal: 36).

 h. Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 38).

Relevant Conduct: Cyberstalking:

 i. The base offense level for cyberstalking is 18 pursuant to U.S.S.G. §2A6.2(a).

 j. Pursuant to U.S.S.G. § 2A6.2(b)(1)(E), there is a two (2) level increase because the offense involved a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim. (Subtotal: 20).

Relevant Conduct: Transfer of Obscene Material:

k. The base offense level for transferring obscene material is 10 pursuant to U.S.S.G. § 2G3.1.

l. Pursuant to U.S.S.G. § 2G3.1(b)(3), there is a two (2) level increase because the offense involved the use of a computer or interactive service. (Subtotal: 12).

Grouping:

m. Pursuant to U.S.S.G. §§ 3D1.2(d) and 3D1.4, sexual exploitation of the same minor victim on different days does not group, there are more than 5 units, and the highest offense level (38) is increased by five (5) levels. (Subtotal: 43).

n. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of your client's acceptance of personal responsibility for his conduct. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. Thus, the final anticipated offense level is 40.

Chapter Four Enhancement:

7. Pursuant to U.S.S.G. § 4B1.5(b) and Application Note 4(B), there is a five (5) level increase because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. (Subtotal 45).

8. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

9. This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4, or 5 of the United States Sentencing Guidelines will be raised or are in dispute.

**Rule 11(c)(1)(C) Plea**

10. The parties stipulate and agree pursuant to Fed. R. Crim. P. 11(c)(1)(C) that the following sentence is the appropriate disposition of this case: a sentence of twenty-five (25) years of incarceration and supervised release for life with the following conditions of supervised release:

    a. You must not have direct contact with any child you know or reasonably should know to be under the age of 18 without the permission of the probation officer. If you do have any direct contact with any child you know or reasonably should know to be under the age of 18, without the permission of the probation officer, you must report this contact to the probation officer within 24 hours. Direct contact includes written communication, in-person communication, or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places. (This does not include minor family members, with whom Probation may approve direct contact in advance.)

    b. You must submit your computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media, to a search. You must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) you use.

    c. You must submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure that you are in compliance with the requirements of your supervision or treatment program.

  11. This agreement does not affect the Court's discretion to impose any lawful fine or to set any additional lawful conditions of supervised release.

  12. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C). In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A). The parties agree that if the Court finds that the defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the government would be bound by the specific sentence or sentencing range contained in this paragraph and the defendant would not be able to withdraw his plea.

  13. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Obligations of the United States Attorney's Office

  14. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Restitution

  15. For purposes of sentencing, the offense of conviction constitutes a crime of violence pursuant to 18 U.S.C. § 16. Therefore, under 18 U.S.C. §§ 3663A, 2259, and 3771, any identified victim is entitled to mandatory restitution. The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected. 18 U.S.C. §§2259, 3663A(b)(2) and (4). The Defendant further agrees that he will fully disclose to

the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. The Defendant reserves the right to object to this Office's request that the Defendant be ordered to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

## Collection of Financial Obligations

16. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

17. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

18. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Forfeiture

19. Your client agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence on April 9, 2017. He further agrees to take whatever steps are necessary to pass clear title to the property to the United States or any State authority. Those items include, but are not limited to:

    a. T-Mobile 'my touch' black cell phone;
    b. iPhone 7, S/N FCFTC2UVHG04;
    c. iPhone 5s, S/N F2LMP224FF9Y;
    d. iPhone model A1387;
    e. Apple device with silver back and no markings; and
    f. JP4 device, #377936 etched on the back.

## Waiver of Appeal

20. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

      a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

      b.    The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence in imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

      c.    Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

      d.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

      e.    The Defendant further waives any and all motions, defenses, probable cause determinations, objections which defendant could assert to the indictment or to the Court's entry of judgment against the Defendant, and any imposition of sentence upon the Defendant consistent with this agreement. If Defendant files a notice of appeal, notwithstanding this agreement, Defendant agrees that this case shall be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

### **Obstruction or Other Violations of Law**

21.    The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) files a motion to withdraw his guilty plea, or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea--even if made pursuant to Rule 11(c)(1)(C) -- if the Court finds that the defendant engaged in obstructive or unlawful behavior and/or failure to acknowledge personal responsibility. In that event, neither the Court nor the government would be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to 11(c)(1)(C).

## Entire Agreement

22. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Paul E. Budlow
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorneys. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorneys, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorneys.

2/12/18
Date

_____
Piere Ceradoy

We are Piere Ceradoy's attorneys. We have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises us that he understands and accepts its terms. To our knowledge, his decision to enter into this agreement is an informed and voluntary one.

2/12/18
Date

_____
Shari Derrow, Esq.

02/12/18
Date

_____
David J. Walsh-Little, Esq.

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

Attachment A
2018 FEB 28   AM 10: 49

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY

The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.

Piere Ceradoy ("Ceradoy"), age 27, is a resident of Crofton, Maryland. As detailed below, between February 2016 and April 2017, Ceradoy repeatedly enticed a minor female to take photographs and stream live videos of herself engaging in sexually explicit conduct and send those images and videos to Ceradoy using a mobile phone and the internet. During the course of the exploitation of the victim, Ceradoy frequently threatened to expose the victim by disseminating the explicit files, and regularly threatened to kill the victim and her family. Ceradoy also sent images and videos of himself engaged in sexually explicit conduct to the victim

Ceradoy engaged in this conduct after two convictions under the laws of any State relating to aggravated sexual abuse, sexual abuse, and abusive sexual conduct involving a minor or ward, while on parole for a sex offense conviction in the state of Washington, and while registered as a sex offender.

In 2005, Ceradoy was convicted of Possession of Child Pornography in violation of Section 11-208(a) of the Maryland Criminal Article, under Case Number 02-K-05-002259 in the Circuit Court for Anne Arundel County; and

In November 2014, Ceradoy was convicted of Attempted Sexual Exploitation of a Minor, in violation of 9.68A.040(1)(a)(b) and 9A.28.020(1) of the Revised Code Washington, under case number 14-1-00116-6, in the Cowlitz County Superior Court, Washington. He was sentenced to 23 to 25 months incarceration, and paroled in February 2016. After being paroled, Ceradoy returned home to Crofton, Maryland where he registered as a sex offender.

In approximately April 2016, Ceradoy used the mobile application Kik to "find" Jane Doe, a minor female in North Carolina. Using Kik, the application Flirt, and other means of electronic communication, Ceradoy began to communicate with Jane Doe, who had recently turned 13. Jane Doe told Ceradoy her true name, age, and address. Ceradoy also provided his full name and age, and told Jane Doe that he lived with his mother and sister.

Shortly after "meeting" online, Ceradoy and Jane Doe began to use text messaging and video chat applications to communicate multiple times per day. Ceradoy immediately initiated sexual conversations with Jane Doe. Ceradoy's communications with Jane Doe became

1

increasingly coercive and controlling. For example, Ceradoy instructed Jane Doe to delete all of her social networking accounts, stay at home, and to stop talking to all of her friends, particularly boys.

Ceradoy coerced Jane Doe to produce images and videos of Jane Doe engaging in sexually explicit conduct. When Jane Doe hesitated or refused, Ceradoy threatened to kill her and her family. After she initially produced the files and sent them to Ceradoy at his requests, he also threatened to send the files to her family if she did not continue to comply with his frequent demands for images, videos, and constant communication. Ceradoy's demands included making Jane Doe live stream herself engaged in sexually explicit conduct that included the lascivious display of her genitals, digital masturbation, and inserting a hairbrush into her vagina and or anus. Ceradoy provided specific instructions to Jane Doe about how to pose in the photos and videos, and also instructed her to search particular phrases on the internet and watch videos of sexual behavior to mimic in her communications with him.

Ceradoy's communication with Jane Doe contained sadistic content, including telling Jane Doe that he wanted to chain her to a bed so that she could not leave, slap her until she bled, slap and choke her with a belt, bite her nipples and genitals until she bled, urinate in her mouth, and rape her. He insisted that she refer to him as "daddy" or "sir," and he regularly called her a "whore."

Ceradoy's threats included stating that he has a cousin who lived near Jane Doe, and that his cousin would come to their house and kill her and her family. He told her that he had people regularly monitoring what she was doing. When Jane Doe refused Ceradoy or did not communicate quickly, Ceradoy's threats to expose her and harm her intensified. Ceradoy told Jane Doe that he needed to act that way in order to control her. When Jane Doe complied, Ceradoy told her that he loved her and wanted to be with her forever. Ceradoy insisted that he wanted to get Jane Doe pregnant, and that they would live together when she turned 18. Ceradoy convinced Jane Doe that she wanted to attend college in Maryland, and she conveyed that plan to her surprised parents. Ceradoy also regularly told Jane Doe that he was going to come to North Carolina to visit her.

From April 2016 through April 2017, Jane Doe continued to produce sexually explicit images and videos at Ceradoy's insistence. Because of her fear of Ceradoy, Jane Doe did not tell anyone, including her parents, about Ceradoy's conduct towards her

Throughout the period of their communication, Ceradoy sent images and videos to Jane Doe that included pictures of him with his son, as well as images and videos of his erect penis and of him masturbating.

2

For a brief period in February 2017, Jane Doe stopped communicating with Ceradoy. Ceradoy threatened to post Jane Doe's explicit photos and "make her pay" and then stated multiple times that he was going to kill Jane Doe. Jane Doe responded, "Ok kill me u will be doing me a favor." Ceradoy texted that he was contacting his friend to kill her that night. Investigators later found searches relating to various methods to commit suicide on Jane Doe's phone. Additionally in April 2017, Jane Doe's mother told investigators that Jane Doe had begun cutting herself in recent months.

On successive days in March 2017, Ceradoy texted Jane Doe, "I'll ducking come after everyone u card bout" and "I'll take everyone ur dad mom everyone away from u". Days later Ceradoy told Jane Doe that he will love her forever, and then sent 4 files of him masturbating. Jane Doe went back to complying with Ceradoy and calling him "sir" and "daddy." March and April continued back and forth, alternating between Ceradoy threatening to kill and/or expose Jane Doe, and Jane Doe complying by sending Ceradoy sexually explicit images and calling him daddy. During this period, consistent with their communication since they met, Ceradoy and Jane Doe communicated as much as 100 times per day, including text messages, audio calls, and live video/audio streaming.

Jane Doe's mother discovered Ceradoy's exploitation of Jane Doe on April 7, 2017, when she entered her daughter's room and found Jane Doe sleeping, while her mobile phone was live streaming video to and from Ceradoy. After Ceradoy disconnected the line, Jane Doe's mother called Ceradoy and told him to stay away from her daughter. Shortly after the call from Jane Doe's mother, Ceradoy deleted all of the relevant communications and image and video files relating to Jane Doe from his phone. On April 9, 2017, investigators in Anne Arundel County, Maryland executed a search and seizure warrant at Ceradoy's residence. When the investigators entered the residence, Ceradoy was located in his bedroom on the second floor and he attempted to kick his mobile phone under the bed. During a post *Miranda* interview, Ceradoy denied using social media because his parole conditions prohibit it, and he claimed to use video streaming only to talk to his son. He also said that he had no idea how a minor would have naked pictures of him.

<u>Use of a Facility and Means of Interstate Commerce</u>

Ceradoy knowingly used a mobile phone and the internet, and knowingly caused Jane Doe to use her mobile phone and the internet to induce, entice and coerce Jane Doe to engage in the above-reference sexual activity. The use of the mobile phones and the internet constituted the use of a facility of interstate commerce.

\*\*\*

3

I have reviewed the foregoing statement of facts with my attorneys, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case

_____ *Piere Ceradoy* (signature)
Piere Ceradoy

I am Mr. Ceradoy's attorney. I have carefully reviewed the statement of facts with him.

_____ (signature)
Shari Derrow, Esq.
Counsel for Piere Ceradoy

I am Mr. Ceradoy's attorney. I have carefully reviewed the statement of facts with him.

_____ (signature)
David J. Walsh-Little, Esq.
Counsel for Piere Ceradoy

4